JOHN W. BURKE, APPELLEE, v. CITY OF SOUTH OMAHA, APPELLANT.

FILED OCTOBER 3, 1907.   No. 14,885.

Cities: LIABILITY. The making, improving and repairing of streets by a municipal corporation relate to its corporate interest only, and it is liable for the wrongful or negligent acts of its agents in performing such duties. *City of Omaha v. Croft,* 60 Neb. 57.

APPEAL from the district court for Douglas county: WILLIS G. SEARS, JUDGE. *Affirmed.*

*Lambert & Winters,* for appellant.

*H. C. Murphy* and *Benjamin S. Baker, contra.*

DUFFIE, C.

Plaintiff was employed by the defendant city in repairing one of its streets. Through the negligence of the foreman in charge of the work he was injured by the action of an uncontrollable and vicious team, being thrown into a pit or washout some 30 feet in depth which was being filled, and he sustained injuries to his damage, fixed by the jury at $2,387.50. Upon the return of the verdict, defendant filed a motion for judgment *non obstante veredicto,* under section 440 of the code. This motion was overruled, and defendant appeals.

No complaint is made of the amount of damages awarded or of errors committed upon the trial, and the only question submitted for our determination is whether or not, under the facts above set out, the city is liable to an employee engaged in the repair of its streets for

negligence resulting in injury to the employee. In other words, does the doctrine of *respondeat superior* apply? Under its charter, general power is conferred upon the defendant city to create improvement districts for the purpose of improving the streets, boulevards, alleys or other public grounds therein by paving, repaving, macadamizing, curbing, guttering, grading or changing the established grade in such manner as may be determined upon. Comp. St. 1905, ch. 13, art. II, sec. 128, subdiv. III. It is also empowered to open, vacate, widen and narrow streets, avenues and alleys within the city; to exercise the right of eminent domain, and appropriate private property for the use of the city for streets, alleys, avenues and other public purposes. Section 128, *supra,* subdiv. XXXIII. It is to control and direct all work upon the public streets, except as otherwise provided. Section 128, *supra,* subdiv. XXXI. It is to care for, supervise and control all public highways, bridges, streets, alleys, public squares and commons within the city, and cause the same to be kept open and in repair and free from nuisance. Section 128, *supra,* subdiv. LVI. It might be further observed that the state has reserved no control of the streets in cities, and has relieved the counties of all responsibilities for the repair or good order of streets in cities and incorporated towns. From this it will be seen that the defendant city has absolute care and control of the streets within its limits, that its duty is to keep them in repair and safe for travel, and whether, when engaged in opening, working and repairing its streets, it is engaged in a corporate capacity or in a governmental duty is the question to be solved and upon which its liability in this case depends. The state cannot, without its consent expressed through legislation, be sued for injuries resulting from an act done in the exercise of its lawful governmental powers and pertaining to the administration of government. When this power is exercised, as it must be, through an agent, the agent cannot be sued for injuries resulting from a strict performance of the agency.

In such case the act is regarded as the act of the state, and not of the agent, who is the mere instrument of the state, and nothing more; and, if the agent employs servants in the performance of the act, he cannot be sued for injuries resulting from the negligence of the servants. The rule of *respondeat superior* does not apply. The state, and not the agent, is the real superior. But when the state, by way of grant or special privilege, authorizes private persons in part for their personal benefit to perform such governmental acts, these persons are not clothed with this immunity of mere agents of the state, although the authority given them may include the exercise of power such as that of eminent domain, which can only be exercised by the state or its agents. *Hourigan v. City of Norwich*, 77 Conn. 358. Municipal corporations are agents of the state in the exercise of certain governmental powers. The preservation of the health and peace of its inhabitants and fire protection afforded the property owner are governmental functions. *Gillespie v. City of Lincoln*, 35 Neb. 34; *Village of Verdon v. Bowman*, 5 Neb. (Unof.) 38. So, also, where an independent officer or board is created by state law to perform certain duties within the corporate limits of a city, and over whose action the city has no control, the city will not be liable for the acts of such officer or board, as their acts are governmental in their character. *Murray v. City of Omaha*, 66 Neb. 279.

But municipal corporations are also treated in certain respects as private corporations; and this when they are authorized by way of special privilege to perform certain acts in part for the special benefit of the corporation and its inhabitants, which, if performed by the state, would undoubtedly be an exercise of its governmental power. When the state imposes upon an incorporated city the absolute duty of performing some act which the state may lawfully perform, and pertaining to the administration of government, the city, in the performance of that duty, may be clothed with the immunities belonging to the mere

agent of the state; but when the city is merely authorized
by way of special privilege to perform such an act in part
for its corporate benefit and the benefit of its inhabitants,
the city is not clothed with these immunities, and is liable
to be sued for injuries inflicted through its negligence in
the performance of such an act.   Cities in this state are
granted special privileges for the benefit of their inhabit-
ants in the control of the streets and alleys within their
corporate limits.   They may create improvement districts,
and grade, gutter and pave their streets, and for this pur-
pose they may levy a special tax upon the property of the
inhabitants.   They are invested with the extraordinary
power of eminent domain in taking private property for
street and alley purposes.   They are privileged to control
and direct the work upon the streets; and these are special
privileges extended by the state, and, as said in *City of
Omaha v. Olmsted,* 5 Neb. 446, "a sufficient consideration
for the duties which the law imposes."   As well said in
that case: "The state grants to the municipality a portion
of its sovereign authority, in greater powers of self-gov-
ernment than are given to *quasi* corporations, in increased
facilities for the acquisition and control of corporate prop-
erty, and in the special authority over, and control of, the
streets, and their adaptation to the wants and convenience
of the citizens of the municipality.   The acceptance of
these privileges is considered as raising an implied
promise on the part of the city to perform its corporate
duties; and this implied agreement made with the sov-
ereign power inures to the benefit of every individual in-
terested in the proper performance of such duties."   This
course of reasoning leads to but one conclusion, namely,
that it is a corporate duty of the city to keep its streets
in good repair and safe for travel.   In numerous cases we
have steadfastly adhered to the rule that a city is respon-
sible to a traveler injured by reason of a defective street
or walk.   This is the doctrine adopted by a large majority
of the states.   In *Barnes v. District of Columbia,* 91 U.
S. 540, the court, at page 551, has listed the states follow-

ing this rule up to 1875, the year in which the opinion was filed. Among them are New York, Illinois, Alabama, Connecticut, North Carolina, Maryland, Pennsylvania, Wisconsin, Virginia and Ohio. The only states mentioned as repudiating the rule are Massachusetts and Michigan. The court, in its opinion, notices and comments upon the fact that in these states which have followed this rule the courts have refused to apply it to counties and towns, and it ends the discussion of that question in the following words: "Whether this distinction is based upon sound principle or not, it is so well settled that it cannot be disturbed. Decisions or analogies derived from this source are of little value in fixing the liability of a city or a village."

If a city is liable to a traveler for injuries incurred in consequence of the defective condition of its streets, on principle it ought to be liable for negligence toward those whom it employs to repair them. In *Barree v. City of Cape Girardeau*, 6 L. R. A. (n. s.) 1090 (197 Mo. 382), the following was held: "The making and improving of streets by a municipal corporation relate to its corporate interests only, and it is therefore liable for the wrongful acts of its agents in performing such duties." In a note to *McMahon v. Dubuque*, 70 Am. St. Rep. 143 (107 Ia. 62), it is said: "Municipal corporations, acting within the purview of their authority, and in their ministerial or corporate character, in the management of property for their own benefit, or in the exercise of powers, assumed voluntarily for their own advantage, are impliedly liable for damage caused by the negligence of their officers and agents, though they may be engaged in some work that will inure to the general benefit of the municipality. Grading streets, cleansing sewers, or keeping wharves in safe condition, from which a profit is derived, are duties of this character: *Moffitt v. Asheville*, 103 N. Car. 237, 14 Am. St. Rep. 810; *Hitchins v. Mayor*, 68 Md. 100, 6 Am. St. Rep. 422; *Gibson v. Huntington*, 38 W. Va. 177, 45 Am. St. Rep. 853; *Heigel v. Wichita County*, 84 Tex.

392, 31 Am. St. Rep. 63." In a note to *Barree v. City of Cape Girardeau, supra,* the author says: "A conflict is found among the authorities dealing with the question under annotation. It is apparent from an examination of these authorities that, in the absence of statutory liability, this conflict does not arise from any distinction between the liability of a municipality for injuries caused by a defective highway and those caused by the municipal employees while engaged in the construction or repair of the highway, but that these liabilities rest upon the same ground, namely, whether or not the construction and repair of highways constitute a public or governmental function instead of a private or corporate function; and that the courts, in passing upon the liability of the municipality for injuries inflicted in the carrying on of the work of construction or repair, divide in accordance with the manner in which this fundamental question has been determined in their respective jurisdictions. Thus, in Colorado, where the construction and maintenance of highways is held to be a corporate, and not a public, duty, the municipality is held liable for the negligent injury of a person engaged in digging gravel from a pit for use in repairing a highway. *Colorado City v. Liafe,* 28 Colo. 468, 65 Pac. 630. And in *Denver v. Peterson,* 5 Colo. App. 41, 36 Pac. 1111, the municipality was held liable for injuries resulting from the frightening of a horse by a steam roller." The same rule was held in New York under like conditions. *Paine v. City of Rochester,* 14 N. Y. Supp. 180. We think our former decisions are clearly to the effect that the care of highways within the municipal limits is a corporate, and not a governmental, function, and, if so, the city is liable to any one injured through its neglect in the performance of that duty. *City of Omaha v. Croft,* 60 Neb. 57.

We recommend an affirmance of the judgment.

GOOD, C., concurs.

By the Court: For the reasons stated in the foregoing opinion, the judgment appealed from is

AFFIRMED.