HARMON CARE CENTERS, INC., A NEBRASKA CORPORATION, APPELLANT, V. JOHN KNIGHT, FORMER DIRECTOR OF THE DEPARTMENT OF PUBLIC WELFARE, ET AL., APPELLEES.
HARMON CARE CENTERS, INC., A NEBRASKA CORPORATION, APPELLANT, V. ELDIN J. EHRLICH, FORMER DIRECTOR OF THE DEPARTMENT OF PUBLIC WELFARE, ET AL., APPELLEES.

340 N.W.2d 872

Filed November 28, 1983. Nos. 83-268, 83-269.

Arend R. Baack of Luebs, Dowding, Beltzer, Leininger, Smith & Busick, for appellant.

Paul L. Douglas, Attorney General, and Royce N. Harper, for appellees Ehrlich and Knight.

Patrick W. Healey of Healey, Brown, Wieland, Kluender, Atwood & Jacobs, for appellee State Farm.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

CAPORALE, J.

Plaintiff-appellant, Harmon Care Centers, Inc., challenges the District Court's dismissal of its petitions following the sustaining of demurrers filed by the defendants-appellees, two former directors of the Nebraska Department of Public Welfare and their sureties. These two cases involve claims that

the directors required Harmon to reimburse certain sums to the Department of Public Welfare under invalid rules and regulations. Harmon requests an accounting and repayment. The two cases have been consolidated on appeal, as the issues involved in each are identical. We affirm.

In case No. 83-268 Harmon brings suit against John Knight and his surety, State Farm Fire and Casualty Company. The suit in No. 83-269 is against Eldin J. Ehrlich and his sureties, Ohio Farmers Insurance Company and State Farm Fire and Casualty Company.

Each suit purports to be on behalf of Harmon and "all other nursing care facilities similarly situated, located and licensed in the State of Nebraska." In summary, the suits allege that the Department of Public Welfare, under the direction of the individual director defendants, required Harmon and other licensed nursing homes to provide the department with cost reimbursement projections under which the department advanced and, after audit, adjusted payments made to Harmon and such others. The refunds made to the department by Harmon and the others in excess of actual costs were made under rules and regulations claimed to be invalid because they had not been properly filed with the Revisor of Regulations of the State of Nebraska, as required by law. By enforcing said invalid rules and regulations, the directors, according to Harmon, breached their duty to administer the department "as provided by law," for which breach the directors and their sureties become liable to Harmon and the other members of the class for the loss of the use of their money. There is no allegation the adjustments were incorrect in amount or that an accounting was demanded from and refused by the directors.

The defendants demurred on the grounds that the trial court lacked jurisdiction because the State had not waived its sovereign immunity to be sued in the form presented by the petitions; that Harmon has no

capacity to sue; that there is a defect of parties plaintiff and defendant; and that each of the petitions fails to state a cause of action.

The trial court sustained the demurrers on the ground that it lacked jurisdiction.

Harmon assigns as its operative claim of error that a suit against a former director of the Department of Public Welfare and his sureties is not a suit against the State of Nebraska and, thus, is not subject to sovereign immunity considerations.

The first attack made by defendants upon Harmon's petitions, and the one which the court below accepted as valid, is that a suit against a former state official is, in essence, a suit against the State itself and, thus, is subject to sovereign immunity considerations.

In support of this position defendants cite language from *Burke v. City of South Omaha*, 79 Neb. 793, 113 N.W. 241 (1907), a case involving a suit by a city employee who was injured while repairing a city street. That case states: "The state cannot, without its consent expressed through legislation, be sued for injuries resulting from an act done in the exercise of its lawful governmental powers and pertaining to the administration of government. When this power is exercised, as it must be, through an agent, the agent cannot be sued for injuries resulting from a strict performance of the agency. In such case the act is regarded as the act of the state, and not of the agent, who is the mere instrument of the state, and nothing more . . . ." *Id.* at 794-95, 113 N.W. at 241.

This language is inapposite to the present case. In its petitions Harmon is complaining that the acts taken by the former state employees were not within the State's lawful exercise of its governmental powers. Harmon further contends that the State's agents acted outside the scope of the authority granted to them by the State, in that the State required that rules and regulations be filed with the Revisor of Regulations.

At common law, "[W]here the duty imposed on a public official is not of a discretionary character, but ministerial, the official will be held liable to third persons for the negligent performance of his duties, and in this respect, a public official's duty is ministerial when it is absolute, certain, and imperative, involving merely the execution of a set task, and when the law which imposes it prescribes and defines the time, mode, and occasion of its performance with such certainty that nothing remains for judgment or discretion. More specifically, where the law imposes on the officer the performance of ministerial duties in which a private individual has a special, direct, and distinctive interest, the officer is liable to such individual for any injury which he may proximately sustain in consequence of the failure to perform the duty at all, or to perform it properly." 67 C.J.S. *Officers* § 208 c. at 686 (1978).

The cases cited to us by the defendants for the proposition that a state officer is cloaked in the State's immunity when exercising his powers all involve an officer who negligently or otherwise performed a discretionary duty. Those cases are not applicable to the claims made here by Harmon, as the duty claimed is ministerial in nature.

Defendants refer us to no statute in derogation of the common-law rule, a rule which we have specifically embraced in *Larson v. Marsh*, 144 Neb. 644, 14 N.W.2d 189 (1944). The facts of *Larson* are highly analogous to the present case. Therein, this court found that a cause of action was stated in a petition filed by a candidate for railway commissioner against the Secretary of State, his deputy, and their respective bonding companies, when it was alleged that the Secretary of State had failed to place the candidate's address on the ballot during an election as required by statute.

Even though we conclude that the reasoning used by the District Court to sustain the defendants' demurrers is incorrect, we are bound by the rule that

an order or decree sustaining a demurrer will be affirmed if any one ground of the demurrer is well taken, irrespective of whether the ruling is based on an erroneous ground. *Morse v. Mayberry*, 183 Neb. 89, 157 N.W.2d 881 (1968). We therefore proceed to a consideration of the other grounds urged upon the trial court.

The first of these remaining grounds is the claim that Harmon lacks the capacity to sue. No arguments are presented to us on this issue, and the only problem we can discern in this connection is whether Harmon may bring this suit as a class action. However, even if Harmon cannot maintain class actions, the question as to whether the suit might proceed on Harmon's own individual behalf would remain. *Roadrunner Development v. Sims*, 213 Neb. 649, 330 N.W.2d 915 (1983); *Blankenship v. Omaha P. P. Dist.*, 195 Neb. 170, 237 N.W.2d 86 (1976). Therefore, we neither consider nor decide the class action issue.

Defendants have also asserted that there is a defect of parties, but have not presented any argument on this issue. We note, however, that Harmon's allegation is that the reimbursements were made to the Department of Public Welfare, not to the directors.

In. *Toop v. Palmer*, 108 Neb. 850, 189 N.W. 394 (1922), the landowners brought an action for a settlement of accounts with the grantees named in a deed which was later cancelled. It was held that a corporation organized and controlled by the grantees, and which had taken legal title to the land, borrowed money thereon, collected rents, and paid taxes, interest, and part of the mortgage debt, was a necessary party to the action. So, too, it appears to us, an accounting in this case cannot be had in the absence of the party which received the reimbursements. Whether the State is in fact immune from such suit, thereby limiting Harmon's remedies, is a question

not presented by these cases, as the State is not named as a party.

The last reason offered by the defendants in support of their demurrers is that Harmon does not state facts sufficient to constitute a cause of action.

In testing this ground we must accept as true all facts well pleaded, but we do not accept as true conclusions of law or of the pleader. *Roadrunner Development v. Sims, supra*; *Shelton v. Board of Regents*, 211 Neb. 820, 320 N.W.2d 748 (1982).

This is an action for an accounting. Such an action can either be one in law or one in equity, depending upon the circumstances in which it is brought. *Philip G. Johnson & Co. v. Salmen*, 211 Neb. 123, 317 N.W.2d 900 (1982). It does appear that there may be circumstances wherein the pleading of a balance due the plaintiff is not essential, such as where an accounting is necessary to show how money advanced by a plaintiff in a business venture has been disposed of. See *Walters-Southland Institute v. Walker, Trustee*, 217 Ark. 602, 232 S.W.2d 448 (1950). Nonetheless, each of Harmon's petitions fails to state a cause of action in other respects.

An accounting action at law is based upon a contract, express or implied. 1 C.J.S. *Accounting* § 2 (1936). Harmon's petitions in the present cases make no allegations that there was or is a contractual relationship between itself and the former directors of the Department of Public Welfare. Furthermore, for an action for a legal accounting to lie, it must appear that "defendant has received property or money, not belonging to him, which he is bound to account for to plaintiff, and that plaintiff is the owner of such property or money." *Id.* § 4 at 639.

As noted previously, Harmon alleges that the Department of Public Welfare, not its directors or their sureties, received the reimbursements. Thus, an action for an accounting at law has not been stated.

To determine whether Harmon has pled a cause

for an accounting in equity, we turn to our recent decision in *Trump, Inc. v. Sapp Bros. Ford Center, Inc.*, 210 Neb. 824, 827-28, 317 N.W.2d 372, 374 (1982), wherein we said: "The petition contains no allegation of a fiduciary or trust or confidential relationship, a complicated series of accounts, nor the inadequacy of a remedy at law. Normally, one or more of these allegations is necessary to plead a cause of action in accounting. In *Dickerson v. Surety National Farm Loan Ass'n*, 127 Neb. 67, 71, 254 N.W. 679, 681 (1934), we said: 'Originally, the basis of equity jurisdiction over matters of accounting was necessity for a discovery, but later authorities have added two other grounds, viz.: The complicated character of the accounts and the existence of a fiduciary or trust relation. 1 C.J. 613. We think the real basic reason for equitable jurisdiction is inadequacy of remedy at law.' See, also, *Corn Belt Products Co. v. Mullins*, 172 Neb. 561, 110 N.W.2d 845 (1961); *Schmidt v. Henderson*, 148 Neb. 343, 27 N.W.2d 396 (1947).

"However, Sapp neither demurred to the petition nor objected in its answer to the claim for equitable relief. ' " 'Where the party, having the right to object, voluntarily submits to the jurisdiction of a court of equity, the cause will be retained for trial on its merits and the proper relief awarded.' " ' *Linville v. Kowalski*, 149 Neb. 402, 407, 31 N.W.2d 281, 284 (1948). 'It is the general rule that if a court of equity has properly acquired jurisdiction in a suit for equitable relief, it may make complete adjudication of all matters properly presented and involved in the case and grant relief, legal or equitable, as may be required and thus avoid unnecessary litigation.' *Kuhlman v. Cargile*, 200 Neb. 150, 156, 262 N.W.2d 454, 458 (1978)."

Harmon's petitions contain no allegations which would support conclusions that any fiduciary, trust, or confidential relationship existed between it and the directors, nor can we conclude that there exists

a complicated series of accounts or that a remedy at law would be inadequate. Accordingly, we must conclude that Harmon's petitions fail to state facts sufficient to support an action for an accounting in equity.

Moreover, an action for an accounting must generally allege the plaintiff demanded and the defendant refused to render an accounting. 1 Am. Jur. 2d *Accounts and Accounting* § 60 (1962). See, also, *State v. Taylor*, 58 Wash. 2d 252, 362 P.2d 247 (1961). No such allegation exists here.

Furthermore, the gravamen of Harmon's complaint is that the reimbursements made under the allegedly invalid rules deprived it of the use of its money. Presumably, although not expressly pled, the notion is that these reimbursements were required and made earlier than would otherwise have been the case. Even if one could imply from those circumstances that Harmon suffered a loss, such loss would be in the nature of the interest one loses prior to reducing an unliquidated claim to judgment. We have said that where a reasonable controversy exists as to a plaintiff's right to recover or as to the amount of such a recovery, the claim is considered to be unliquidated, and prejudgment interest is not allowed. *Land Paving Co. v. D. A. Constr. Co.*, *ante* p. 406, 338 N.W.2d 779 (1983); *Langel Chevrolet-Cadillac v. Midwest Bridge*, 213 Neb. 283, 329 N.W.2d 97 (1983). By the same logic, any loss occasioned by the unavailability of the money claimed by Harmon to have been prematurely reimbursed to the State would not be recoverable if either Harmon's right to withhold the reimbursement or the amount thereof were in reasonable controversy.

The District Court was correct in sustaining the defendants' demurrers and dismissing Harmon's petitions.

AFFIRMED.